Filed 5/19/16  Marriage of Josefson and Huebner CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CYNTHIA JOSEFSON and DENNIS HUEBNER. | H039618 (Santa Clara County Super. Ct. No. 5-09-FL000201) |
| CYNTHIA JOSEFSON, Appellant, v. DENNIS HUEBNER, Respondent. | |

## I.  INTRODUCTION

Appellant Cynthia M. Josefson and respondent Dennis A. Huebner were married in 1993.  A judgment of dissolution was entered 16 years later, in 2009.  At issue in the present appeal is the trial court's order of permanent spousal support, which awarded Josefson permanent spousal support of $1,000 per month from May 1, 2013 until May 1, 2016; $500 per month from May 1, 2016 until 2017; and zero beginning May 1, 2017.

Josefson contends on appeal that the trial court abused its discretion by failing to properly consider certain circumstances as required by Family Code section 4320[1] in

---

[1] All statutory references are to the Family Code unless otherwise indicated.

determining permanent spousal support, including (1) failing to make a specific finding as to Josefson's needs; (2) finding Josefson's earning capacity on the basis of speculation; (3) failing to consider Josefson's needs in light of the marital standard of living; and (4) disregarding evidence of Huebner's ability to pay.

For the reasons stated below, we find no merit in Josefson's contentions and we will affirm the order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Pretrial Proceedings*

Josefson and Huebner were married in 1993. They separated in August 2009 and a judgment of dissolution was entered in September 2009. The couple had no children. Josefson has adult children from a prior marriage.

Huebner was ordered to pay temporary spousal support of $2,600 per month to Josefson, pursuant to the trial court's November 12, 2009 order. In September 2012 Huebner filed a request for an order setting permanent spousal support and issuing a *Gavron* warning[2] to Josefson. Josefson requested permanent spousal support in the amount of $2,600 per month.

### B. *The Court Trial*

The trial court set a March 2013 trial date on the issue of permanent spousal support. At the time of trial, Huebner requested that permanent spousal support be set at zero.

---

[2] The court in *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 stated: " '[T]he Legislature intended that all supported spouses who were able to do so should seek employment. It also appears the Legislature expected that courts would issue orders encouraging these spouses to seek employment and to work toward becoming self-supporting.' [Citations.]" (Id. at p. 711.)

Our summary of the relevant evidence presented at the court trial is drawn from the reporter's transcript of the witness testimony and the documentary evidence admitted at the trial.

### 1.  Marital Standard of Living

Regarding the marital standard of living, Josefson recalled that she and Huebner took several vacations each year, she had her hair and nails done and bought clothing every week, she shopped at Nordstrom, flew airplanes, drove "nice cars," and "lived in the nicest area, the nicest home."  Their home was approximately 3500 square feet on a one-acre lot.

Huebner's standard of living has been reduced since the parties divorced.  He lives in a one-bedroom apartment with his girlfriend, has no assets, and has filed for bankruptcy.

Josefson's standard of living has also been reduced.  Her current living situation includes living in the 3500 square foot marital home, which she has sectioned off so that she lives in a 400 square foot space that includes the family room and a bathroom.  She rents out the rest of the home.  She does not have her hair or nails done or vacation as she did before the marriage, and does not enjoy the same quality of life.

Regarding her contributions to Huebner during their marriage, Josefson claimed that she had loaned him an unspecified amount of money to repay his student loans.  She also claimed that Huebner had discouraged her from working during their marriage so she would "stay home and make money."  Huebner testified that Josefson did not repay his student loans and she did not contribute to his college degree.

### 2.  Employment History

Josefson's employment history includes working from an early age.  During her first marriage at the age of 18, Josefson had various jobs including a position with Household Finance.  After filing for divorce in 1991, she was employed at Intercon Tools.  Both jobs involved answering the telephone and entering transactions.  In 1993

Josefson began working as a contracts manager for Calpine. After three years at Calpine Josefson worked briefly for Sun Microsystems before going to work for Cisco in 1997 as a project manager. Josefson was laid off by Cisco in 2000 or 2001. Social Security statements show that Josefson's income was $80,000 in 1999; $120,000 in 2000; and $181,000 in 2001.

After Josefson was laid off by Cisco, she decided not to return to the corporate world for employment because she could not advance without a college degree and because she "wanted to start flying." She had purchased an airplane in 2001 that she originally wanted to rent as a trainer to offset the cost of flying lessons, but she decided against that plan and went into real estate.

Josefson's real estate experience included buying her first house at the age of 18. She obtained a real estate license in 1985 that she continually renewed until 2010. According to Josefson, she has never made a profit in her real estate endeavors. She held a real estate license so that she could manage her own properties and receive an income tax credit. She also worked as a real estate agent for Intero in 2008 and 2009.

During their marriage, the couple purchased a real property about every 18 months on average. They had nine rental properties that Josefson managed with Huebner's assistance. She also managed the rental of her sons' two homes while they were away at college. Huebner's records showed that from 2003 to 2009 the parties sold five properties with an appreciated value of $1,378,000 and obtained equity and credit lines in the amount of $1,407,000 to supplement their income.

Huebner graduated from college in 1991 with a B.S. in industrial technology and has been continuously employed since then. For the past 13 years, he has been employed by the City of Palo as a facilities manager. Huebner obtained a general contractor's license in 1999. He renovated the parties' real properties during the marriage and also did side jobs for other people. He recalled that the parties covered their expenses during

4

their marriage in excess of his income by "selling properties and pulling equity lines out of other properties."

### 3. Current Income

The record includes pages 1 and 4 of Josefson's March 15, 2013 income and expense declaration. The trial court found that Josefson's March 15, 2013 income and expense declaration showed income of $10,258.99 per month, which includes temporary spousal support of $2,600.

Josefson testified that her current income includes monthly rental income of $2,200 for "the main house," $1,200 for "the granny house," and $35 for "the loft." Josefson also receives monthly rental income from two other residential properties: $2,050 for "Toyon" and $2,091 for "Bay Tree." She is paying the mortgage or a loan modification on the rental properties and believes that she is not able to meet her current expenses without receiving spousal support of $2,600 per month. According to Huebner, Josefson is now eligible to receive payments of $1,500 per month as her share of his City of Palo Alto pension.

Huebner's current job title with the City of Palo Alto is manager, facilities maintenance, and his annual salary is $111,000. He submitted a November 16, 2012 income and expense declaration in which he stated that his gross monthly income as an employee of the City of Palo Alto is $9,259 and his total monthly expenses are $7,305.

### 4. Expert Witness Testimony

A vocational consultant retained by Josefson, Richard Lyness, conducted a preliminary vocational assessment in which he found that Josefson is employable despite her barriers of age (54), lack of a postsecondary degree, and lack of recent relevant experience. Lyness also determined that "[o]n the plus side, she is obviously intelligent, she has strong communication skills, she interacts well." He had not analyzed the viability of Josefson's current business venture and had not been given any information about her experience as a real estate agent or managing real property. Lyness expected

5

that Josefson would "become appropriately employed and move toward being self-supporting within a reasonable frame of time." He would need another two or three weeks to complete his vocational assessment, however. Regarding his statement in his written report that Josefson was not "work ready," Lyness explained that she is not "work ready" due to her involvement in this litigation.

A licensed clinical social worker, Kenneth Deaver, testified on Josefson's behalf. Deaver had performed a mental health assessment of Josefson. He determined that she did not meet the requirements for post-traumatic stress disorder, does not suffer from any form of mental disorder, and is able to function in a "pro-social manner." Deaver stated that Josefson "could hold a job and, in fact, I believe that she is working at this time."

### 5. Domestic Violence Allegations

Josefson testified that Huebner physically abused her during the marriage and caused an injury to her breast. Huebner denied that he had committed domestic violence. The record reflects that a court trial on Josefson's request for a permanent restraining order against Huebner was held in October 2010. At the conclusion of the trial, the court denied Josefson's request for a permanent restraining order, finding that her allegations of domestic violence against Huebner were unproven and Josefson was not credible.

### C. *Trial Court Order*

The trial court filed a tentative statement of decision to which Josefson filed objections with additional exhibits.[3] The trial court issued its final statement of decision on April 29, 2013, awarding Josefson permanent spousal support of $1,000 per month from May 1, 2013 until May 1, 2016; $500 per month from May 1, 2016 until 2017; and zero beginning May 1, 2017.

---

[3] The tentative statement of decision was not included in the record on appeal.

6

The trial court also ordered the parties to "resolve the QDRO[4] issue by June 1, 2013," with respect to Huebner's representations that although Josefson was entitled to payment of $1,500 per month as her share of his City of Palo Alto pension she had failed to cooperate with finalizing the division of the pension. The court stated that Josefson's entitlement to a portion of Huebner's pension was a "key factor" in reducing the payments of permanent spousal support, since the pension payment would give Josefson a total of $2,500 in monthly income from Huebner for the next three years.

The trial court's orders were based on a number of factual findings pursuant to section 4320, as stated in the final statement of decision. The court found that there was no evidence that Josefson had contributed to Huebner's attainment of his education, training, career, or license. There was also no documented evidence of a history of domestic violence between the parties, and the court declined to make a finding of domestic violence.

Regarding the marital standard of living, the trial court found that "the marital standard of living was upper class, with at times, the couple drawing down millions of dollars . . . from their rentals, the sale of property and using credit lines in order to support that luxury and extravagance." The court further found that since "the couple could never have lived the lifestyle that they did solely on [Huebner's] income, the Court finds that [Josefson] was self-employed throughout the marriage and is considering [Huebner's] and [Josefson's] income as part of the marital standard of living."

Based on Huebner's civil servant salary of $9,259 and his living expenses of $7,305, the trial court determined that he had the ability to pay spousal support for a period of time, but it would not be possible for either party to live at the marital standard

---

[4] A " 'QDRO is a subset of "domestic relations orders" that recognizes the right of an alternate payee to "receive all or a portion of the benefits payable with respect to a participant under [a retirement benefits] plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).' [Citations.]" (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 840.)

of living in the future. The court noted that there was no credible evidence that Huebner had earned "significant money" due to his contractor's license. Josefson's March 2013 income and expense declaration was found not to be credible, in light of Josefson's claim that she had monthly expenses of $26,622.03, an income of $10,258.99, and little or no consumer debt. The court also found that there was no community debt and no substantial evidence of any tax consequences.

As to Josefson's earning capacity, the trial court found that Josefson had the ability to become self-supporting in a reasonable period of time because she had marketable skills in real estate acquisition and management.

In balancing the hardships, the court rejected both parties' claims that they were destitute, noting that Josefson owned three real properties and a partial interest in an airplane, while Huebner had an annual salary in excess of $100,000.

Finally, the trial court noted that neither party had asked the court to consider any additional factors.

### III. DISCUSSION

Josefson contends on appeal that the trial court abused its discretion by (1) failing to make a specific finding as to Josefson's needs; (2) finding Josefson's earning capacity on the basis of speculation; (3) failing to consider Josefson's needs in light of the marital standard of living; and (4) disregarding evidence of Huebner's ability to pay.

As we will discuss, we find that Josefson's failure to show that the trial court abused its discretion in ordering permanent spousal support is fatal to her contentions on appeal. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 (*Cheriton*).) We will begin our discussion with the rules that govern our review of an order based upon a statement of decision following a court trial, followed by an overview of the abuse of discretion standard of review that applies an award of permanent spousal support.

8

**A.** *Standard of Review*

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. The general rule is that " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Accordingly, " 'in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' [Citation.]" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 (*Cuiellette*).) We give deference to the trial court's factual findings "because those courts generally are in a better position to evaluate and weigh the evidence. [Citation.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385.)

Accordingly, where the sufficiency of the evidence is challenged on appeal, "the reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368 (*Baxter Healthcare*).) The appellant is therefore required to provide a summary of *all* of the evidence, not merely his or her own evidence, with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) In other words, we presume that the record contains sufficient evidence to support the

9

trial court's finding, unless the appellant affirmatively demonstrates that the evidence is insufficient. (*Baxter Healthcare*, *supra*, at p. 368.)

The substantial evidence standard of review applies to both the express and implied findings of fact made by the trial court in its statement of decision following a bench trial. *(SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 (*SFPP*).) "The doctrine of implied findings is based on our Supreme Court's statutory construction of [Code of Civil Procedure] section 634 and provides that a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' [Citation.]" (*Ibid.*)

Keeping this general standard of review in mind, we turn to the rules governing an award of permanent spousal support.

### B. *Permanent Spousal Support*

This court has previously stated the rules that apply to an award of permanent spousal support: "Spousal support is governed by statute. (See §§ 4300-4360.) In ordering spousal support, the trial court *must* consider and weigh all of the circumstances enumerated in the statute, to the extent they are relevant to the case before it. [Citations.] The first of the enumerated circumstances, the marital standard of living, is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.]" (*Cheriton*, *supra,* 92 Cal.App.4th at pp. 302-303, fns. omitted.)

At the time of the trial court's April 29, 2013 order of permanent spousal support, former section 4320 provided: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of

10

the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living. [¶] (d) The needs of each party based on the standard of living established during the marriage. [¶] (e) The obligations and assets, including the separate property, of each party. [¶] (f) The duration of the marriage. [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [¶] (h) The age and health of the parties. [¶] (i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party. [¶] (j) The immediate and specific tax consequences to each party. [¶] (k) The balance of the hardships to each party. [¶] (l) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties. [¶] (m) The criminal conviction of an abusive

11

spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325. [¶] (n) Any other factors the court determines are just and equitable."

" 'In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it.' [Citation.] In balancing the applicable statutory factors, the trial court has discretion to determine the appropriate weight to accord to each. [Citation.] But the 'court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in [the statute], especially reasonable needs and their financial abilities.' [Citation.] Furthermore, the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support. [Citations]." (*Cheriton*, *supra*, 92 Cal.App.4th at p. 304.)

The standard of review for an order of permanent spousal support is therefore abuse of discretion. " 'In awarding spousal support, the court must consider the mandatory guidelines of section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.]' [Citation.]" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283.)

**C.** *Analysis*

**1. Finding of Need**

Josefson contends that the trial court abused its discretion by failing to make a specific finding as to her reasonable needs, as required by section 4320, subdivision (d). We understand Huebner to respond that Josefson did not submit evidence from which the trial court could make a specific finding of her needs.

Former section 4320, subdivision (d) provided that one of the circumstances the court shall consider in ordering spousal support is "[t]he needs of each party based on the standard of living established during the marriage." We agree that the trial court's statement of decision shows that the court did not make an express finding as to Josefson's needs. However, the record also reflects that Josefson did not object to this deficiency in her objections to the tentative statement of decision. This omission is fatal to her claim of trial court error.

As we have noted, "[t]he doctrine of implied findings is based on our Supreme Court's statutory construction of [Code of Civil Procedure] section 634 and provides that a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' [Citation.]" *(SFPP, supra,* 121 Cal.App.4th at p. 462.) We therefore imply all the findings necessary to support the judgment, including an implied finding regarding Josefson's needs.

Josefson's reliance on the decision in *Cheriton* does not compel a contrary conclusion. In *Cheriton*, this court stated: "We further note that the trial court's findings in this case, though admirably detailed as to other points, do not specify [Wife's] actual monthly need for support. We might infer that the court determined [Wife's] needs to be $4,700 per month, based on its imputation to her of $2,700 in monthly income plus its award to her of $2,000 in monthly support. But it is unnecessary for us to draw inferences in this case, given our determination that remand is required. On remand, the court should determine and articulate [Wife's] reasonable needs." (*Cheriton, supra,* 92 Cal.App.4th at p. 307.)

*Cheriton* is distinguishable from the present case, in which we do not determine that remand is appropriate. We may therefore infer the trial court impliedly found that

13

Josefson's needs would be met by her monthly rental income of $7,635, plus monthly spousal support of $1,000 and a monthly pension payment of $1,500. Josefson has not shown that this implied finding of need is not supported by substantial evidence.

We understand Josefson to also contend that the trial erred in imputing rental income to her without considering whether this income would meet her needs after deducting her mortgage and loan modification expenses. According to Josefson, these expenses result in her having "zero spendable income." Huebner asserts that Josefson was given the opportunity to provide evidence of the value of her real properties and her expenses, but she failed to provide any credible evidence.

The trial court found as follows in its final statement of decision: "The evidence at trial showed that [Josefson] has started her own business and that she continues to manage at least two rental homes and she rents out a majority of her own 3,500 square foot home, while living in a small portion of it, and brings in $3435 per month in that rental income alone. She also earns another $4,200 in rental income from the two homes that she rents out in conjunction with the Housing Authority. She does owe mortgages on these homes; however it is very unclear as to how much the mortgages are. At one point she said that her mortgage payments had gone from $900 per month then it went to $300 per month and then $150 every two weeks in order to pay off the loan more quickly. That would mean that she is earning a profit on the rentals each month since the rent she is charging per month is $2,000 plus. She is also gaining equity in all three homes. . . . [T]he Court has read through [Josefson's] 46 page document and has found no information beyond October of 2012 that gives any indication of the value of the two rental homes or of how much [Josefson] is paying in mortgage payments for the two rental properties. There was no credible evidence submitted regarding the value of the three homes that [Josefson] now owns."

We are not convinced by Josefson's argument that the trial court erred because her evidence showed that her expenses are greater than her income. We reiterate that

14

our standard of review requires us to " ' "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]" [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.]  Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' [Citation.]" (*Cuiellette*, *supra*, 194 Cal.App.4th at p. 765.)  Josefson's argument would require us to reweigh the evidence regarding her expenses, which we may not do.

We are also not persuaded by Josefson's reliance on the decision in *In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090 (*McTiernan*), since that decision is distinguishable.  In *McTiernan*, the appellate court determined that the trial court had erred in imposing a two-year limitation on spousal support without considering all of the section 4320 factors, including the great disparity between the husband's current monthly income of $115,640 and the wife's current monthly income of $5,777, and the evidentiary uncertainty that the wife could become self-supporting during that limited time.  (*McTiernan, supra,* at pp. 1107, 1108.)  In the present case, there is no evidence of either a great disparity between the parties' income or a two-year limit on spousal support.

We therefore find no merit in Josefson's contention that the trial court abused its discretion by failing to make a specific finding as to her reasonable needs, as required by section 4320, subdivision (d).

### 2.  Earning Capacity

Josefson contends that the trial court abused its discretion in imputing earning capacity to her in the absence of any supporting evidence that she could become self-supporting in real estate.  Huebner argues that the trial court's finding that Josefson will be able to support herself is based on substantial evidence regarding her previous work of investing in and managing real properties.

15

Section 4320, subdivision (a)(1) provides that the circumstances the trial court must consider in determining spousal support include "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:  [¶]  The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment."

In the final statement of decision, the trial court stated its findings that Josefson "has marketable skills in real estate acquisition and management.  She chose to allow her Real Estate License [to] lapse.  She says that she is now living a destitute lifestyle and cannot afford anything above the basics.  The Court does not find this testimony credible. She has the ability to become fully self supporting within a reasonable period of time based on her earning capacity and abilities already demonstrated."  Additionally, the court found that Josefson had started her own business and neither expert had reported that Josefson had any health issues that would prevent her from working.

Josefson asserts that the trial court's findings were based on mere speculation, asserting that her vocational expert testified that she is not "work ready," her prospects in real estate were not strong since she lacks a real estate license, and her evidence showed that she was not qualified for property management jobs.  This argument is not persuasive, since it would require us to weigh the evidence regarding Josefson's earning capacity.  As we have discussed, the applicable standard of review precludes us from weighing the evidence or assessing the credibility of witnesses.  (See *Cuiellette*, *supra*, 194 Cal.App.4th at p. 765.)

### 3.  Finding of Need in Light of the Marital Standard of Living

Josefson contends that a finding of her needs based on the marital standard of living, as required by section 4320, subdivision (d), is "[s]trikingly absent" from the final

16

statement of decision. According to Huebner, the trial court properly gave the marital standard of living reduced significance because his income did not support their standard of living during the marriage.

Former section 4320, subdivision (d) provides that the circumstances that the trial court must consider in ordering spousal support include "[t]he needs of each party based on the standard of living established during the marriage." "[H]owever, . . . the marital standard of living is not the sole factor to consider in determining whether the supported spouse's reasonable needs have been met. [Citations.]" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 307.) " 'The Legislature has never specified that spousal support must always meet the needs of the supported spouse as measured by the marital standard of living.' [Citation.] It is a general reference point. [Citation.] '[T]he trial court may fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case.' [Citation.]" (*In re Marriage of Khera and Sameer* (2012) 206 Cal.App.4th 1467, 1483-1484.)

In this case, the trial court found that it would not be possible for the parties to maintain the upper class standard of living that they had enjoyed during their marriage, because "[Huebner] is 45 years old and gainfully employed and has the ability to pay some spousal support for a period of time, but it is an amount that would never be able to allow for either him or for [Josefson] to live at that high standard in the future." Josefson argues on appeal that the trial court in making this finding "failed to analyze how her needs are offset in light of the marital standard of living."

We note that Josefson did not object to the omission of a finding of her needs in light of the marital standard of living in her objections to the trial court's tentative statement of decision. We reiterate that "[t]he doctrine of implied findings is based on our Supreme Court's statutory construction of [Code of Civil Procedure] section 634 and provides that a 'party must state any objection to the statement in order to avoid an

17

implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' [Citation.]" *(SFPP*, *supra*, 121 Cal.App.4th at p. 462.) We therefore imply all the findings necessary to support the judgment, including an implied finding regarding the needs of each party with reference to the marital standard of living.

### 4. Ability to Pay

Finally, Josefson argues that the trial court disregarded evidence of Huebner's ability to pay, which included living with his girlfriend, taking vacations, and having "no discernible debt." Huebner asserts that trial courts may not consider the income of a subsequent spouse or partner in determining the supporting spouse's ability to pay. We agree.

Section 4323, subdivision (b) provides: "The income of a supporting spouse's subsequent spouse or nonmarital partner shall not be considered when determining or modifying spousal support." Thus, the statute prohibits the trial court from considering "new mate income" in ordering permanent spousal support. (*In re Marriage of Romero* (2002) 99 Cal.App.4th 1436, 1444.)

Moreover, we find no merit in Josefson's argument because she seeks a reweighing of the evidence regarding Huebner's ability to pay. The trial court found in its final statement of decision that Huebner "clearly has the ability to remain self supportive and pay some spousal support while [Josefson] becomes more financially stable. But his Income and Expense Declaration clearly shows that he is currently operating at a loss and recently filed for personal bankruptcy." Josefson has not made an affirmative showing that the trial court's findings are not supported by substantial evidence, as required by our standard of review. (See *Baxter Healthcare*, *supra*, 120 Cal.App.4th at p. 368.)

18

For these reasons, we determine that Josefson has not met her burden on appeal to show that the trial court abused its discretion in ordering permanent spousal support, and we will affirm the order of April 29, 2013.

## IV.  DISPOSITION

The order of April 29, 2013 is affirmed.  Costs on appeal are awarded to respondent.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.


_____
MIHARA, J.

**Josefson v. Huebner**
**H039618**