Filed 6/27/23  Jones v. Capital Alliance Advisors CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LOUIS JONES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CAPITAL ALLIANCE ADVISORS, INC., <br><br> Defendant and Respondent. | H049391 <br> (Santa Clara County <br> Super. Ct. No. 16CV304278) |

## I.  INTRODUCTION

Plaintiffs Louis Jones and Wanda Perry brought a civil action against defendant Capital Alliance Advisors, Inc., a lender, to enjoin a trustee's sale of plaintiffs' residence and to seek damages for misrepresentation.  Plaintiffs alleged that the trustee's sale was based on a deed of trust that secured a loan "that ha[d] long since been canceled."  After a bench trial, the trial court concluded that the underlying loan to plaintiffs had not been cancelled, and a judgment was subsequently entered in favor of defendant.

On appeal, plaintiffs contend that the trial court erred because the debt had been cancelled.  For reasons that we will explain, we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Complaint*

In December 2016, plaintiffs filed a complaint against defendant alleging three causes of action for injunctive relief, declaratory relief, and misrepresentation.[1] Plaintiffs alleged that the deed of trust on their primary residence was based on a debt that had been cancelled, yet defendant sought foreclosure. Plaintiffs sought to enjoin the sale of their primary residence in view of the cancellation of the underlying debt. Plaintiffs also alleged that defendant misrepresented to them that it had the right to foreclose. In reliance on this alleged misrepresentation, plaintiffs thereafter made a $30,000 partial payment towards the claimed debt and to delay the foreclosure.

### B. *The Trial*

A bench trial was conducted in 2021. The court heard witness testimony over several days, and numerous exhibits were admitted into evidence.

### C. *The Statement of Decision*

The trial court filed a detailed statement of decision on June 17, 2021. In the statement of decision, the court set forth the following:

Defendant is a private money lender. In July 2007, defendant loaned plaintiffs $609,999.75 for costs of construction on commercial real property that was owned by plaintiffs and located on Fourth Street in San Rafael. The loan was secured by (1) a second deed of trust on the commercial property and (2) a second deed of trust on plaintiffs' primary residence in American Canyon.

Defendant had "loan warehousing" and line of credit agreements with Gateway Bank, FSB (Gateway). After defendant made the loan to plaintiffs, defendant pledged the

---

[1] Plaintiffs also named as a defendant PLM Loan Management Services, Inc. (PLM), which allegedly was appointed as trustee under the deed of trust and recorded a notice of trustee's sale regarding plaintiff's residential property. PLM is not a party to this appeal.

2

loan to Gateway as collateral for credit advanced by Gateway. Under the agreements between defendant and Gateway, Gateway was to service and "partially own" the loans pledged on the credit line. Defendant told plaintiffs to make payments to Gateway, which would be servicing the loan.

In the latter half of 2008, Gateway claimed that it had the right to take full ownership of all the loans pledged by defendant. By the end of 2009, Gateway and defendant were in litigation against each other.

In the meantime, beginning in 2008, plaintiffs stopped making regular payments on the loan. In 2009 and 2010, Gateway sent correspondence and called plaintiffs regarding their ability to make payments on the loan. From August to October 2010, Gateway accepted monthly payments of $2,000 from plaintiffs. These monthly payments prompted an internal discussion at Gateway regarding the proper accounting for the payments. Gateway eventually determined it would "charge off" the loan and characterize the payments as a "recovery."

In or around October 2010, Gateway issued an IRS form 1099-C to plaintiffs and filed the form with the IRS. The form identifies Gateway as the creditor, Louis Jones as the debtor, and the account number of the loan. Box 1 of the form, regarding "[d]ate canceled," states "10/14/2010." Box 2, regarding "[a]mount of debt canceled," states "$609,999.75." Box 4, regarding "[d]ebt description," identifies plaintiffs' commercial property in San Rafael.

In November 2010, plaintiffs filed for bankruptcy. Gateway stopped directly communicating with, or trying to collect the debt from, plaintiffs. In the bankruptcy action, the lienholder in the first position on the commercial property obtained relief from the bankruptcy stay and foreclosed on the commercial property in August 2011. As a result, the loan by defendant to plaintiffs could not be enforced personally against plaintiffs, but the deed of trust was still enforceable against their residence. Plaintiffs received a discharge from bankruptcy on January 10, 2012.

3

Plaintiffs gave the form 1099-C, issued by Gateway, to their accountant. Plaintiffs reported the information from the form 1099-C on their 2010 tax return, which was prepared no later than January 28, 2012, after plaintiffs' discharge in bankruptcy. Plaintiffs paid no taxes as result of the income reported on the form 1099-C, and they reported a total loss of $904,783 for 2010.

In 2012, the litigation between Gateway and defendant proceeded to trial. A jury determined that Gateway had properly taken full ownership of defendant's loans. Gateway and defendant subsequently reached a settlement agreement in July 2012, pursuant to which Gateway transferred plaintiffs' loan back to defendant.

Defendant did not immediately communicate with plaintiffs or attempt to enforce the deed of trust. Beginning in 2015, defendant negotiated with plaintiffs regarding satisfaction of the loan. In 2015 and 2016, plaintiffs paid defendant $30,000 in installments under a forbearance agreement, but they did not pay the remaining amount due under that agreement. At trial, both parties denied that the forbearance agreement was a novation.[2]

In August 2016, defendant recorded a notice of trustee's sale under the deed of trust for plaintiffs' American Canyon residence. The sale was scheduled for September 21, 2016. The notice of trustee's sale indicated that the amount of the unpaid principal and other charges was an estimated $866,726.25. Plaintiffs provided defendant with the form 1099-C, but defendant did not stop the foreclosure proceedings.

Based on these facts, the trial court made several determinations in its statement of decision.

First, the trial court found that Gateway did not cancel the loan. The court determined that the form 1099-C was "some evidence of cancellation; however, it [did] not in and of itself establish that a debt ha[d] been canceled." The court explained that

---

[2] A novation has been defined to include the replacement of an existing obligation with a new obligation. (See *Raceway Ford Cases* (2016) 2 Cal.5th 161, 171.)

4

although Gateway issued a form 1099-C, Gateway did not release its security interest in plaintiffs' American Canyon property. The court "found no evidence that Gateway made a conscious decision or took an affirmative act to terminate [p]laintiffs' obligation and the associated security interest." The court consequently found that plaintiffs "did not meet their burden of proof to show that cancellation of the debt had occurred."

In reaching this conclusion, the trial court rejected an argument by plaintiffs that was based on the IRS instructions to form 1099-C. The court stated, "Citing the IRS instructions to the issuer of a [f]orm 1099-C, [p]laintiffs argue that the [f]orm 1099-C is evidence of the affirmative act of Gateway because the 'identifiable event,' '[a] discharge of indebtedness *pursuant to a decision by the creditor*, or the application of *a defined policy of the creditor*, to discontinue collection activity and discharge debt,' occurred. However, no evidence was presented to the Court of a decision by Gateway, there was no evidence of a written policy to cancel a secured debt under the particular circumstances present in this case, and the only evidence of a 'defined policy' was conflicting. Specifically, there was deposition testimony and an e-mail [proffered] to suggest that it would not have been common practice at Gateway to continue to pursue collection of the debt which was secured by a second lien behind sizeable first deeds of trust, during an overall recession when property values were in sharp decline. However, there was no evidence that this particular [l]oan had been reviewed by any committee, board or executive charged with making the decision of which loans would be cancelled and the lien released. Further there was undisputed evidence that lenders in this time frame (2010-2015) could and did take the position that property values would recover, in which case the secured debt could be collectible (e.g. upon sale or refinance). The Court finds that [p]laintiffs did not meet their burden of proof to show the 'identifiable event' occurred. Rather, at the time the [f]orm 1099-C issued, Gateway was engaged in communications with [p]laintiffs about their ability to pay, their willingness and ability to make some payments towards the debt, [p]laintiffs were making $2,000 monthly

5

payments on the [l]oan, and Gateway was accepting the payments." (Underscoring omitted.)

The trial court also addressed evidence regarding the loan being "charged off": "The evidence presented to the Court was that Gateway charged off the [l]oan. A charge-off is a characterization of the loan for accounting and reporting purposes. A 'charge-off' of a loan means that it is no longer considered to be an 'active' account, or part of the anticipated ongoing regular revenues — and that any money thereafter obtained will be accounted for as a 'recovery'. A charge-off is not a cancellation of the debt, as both [p]laintiffs' and [defendant's] experts agreed." (Underscoring omitted.)

The trial court further observed: "The IRS 1099-C instructions cited by [p]laintiffs state the existence of a security interest – such as the [d]eed of [t]rust which continued to exist here – is evidence that a debt has not been cancelled. Those instruction[s] provide that when dealing with a secured transaction, a 1099-C should be issued when both the debt has been discharged and the lien associated with that debt has also been discharged or terminated. There is no evidence of any decision made by Gateway to both discharge the debt and to reconvey the [d]eed of [t]rust (or otherwise terminate the lien). The Court finds that Gateway did not cancel the [l]oan or the lien created by the [s]econd [d]eed of [t]rust on" plaintiffs' American Canyon property. (Underscoring omitted.)

Second, the trial court determined that the doctrine of equitable estoppel did not support plaintiffs' claims for declaratory relief. Plaintiffs had argued that defendant was estopped from denying a cancellation of the debt as plaintiffs had reasonably relied on the form 1099-C by reporting information from the form on their tax return. The court observed that injury is an element of the doctrine of equitable estoppel. The court found, however, that plaintiffs "did not show that they suffered injury as a result of reducing their 2010 net operating loss by the amount of $610,000. Plaintiffs' post-reduction losses for 2010 were $904,783. Plaintiffs introduced no evidence of an injury suffered because

6

the 2010 tax loss . . . was $904,783 and not $1,514,783. For example, [p]laintiffs did not show that in subsequent years they could have reduced their tax liability by increasing their loss carry-forward, if their 2010 loss was greater than $904,783."

Third, the trial court determined that defendant could not recover interest accruing on the loan after October 14, 2010, the date of the form 1099-C, and that plaintiffs were entitled to a credit of $30,000, representing the amount plaintiffs had already paid toward the principal balance.

Fourth, the trial court determined that plaintiffs did not prove their third cause of action for fraud. The court explained that Gateway did not cancel the loan, the deed of trust was valid, and defendant did not fraudulently misrepresent that the deed of trust was valid.

**D. *The Judgment***

On June 24, 2021, a judgment was filed in favor of defendant on plaintiffs' complaint. In the judgment, the trial court declared, among other things, that the "indebtedness secured by the [d]eed of [t]rust" on plaintiffs' residential American Canyon property "was not cancelled, and the [d]eed of [t]rust remains valid." Further, "[a]ll interest accruing after October 14, 2010 up to the date of this judgment [was] disallowed," and the "unpaid principal balance of the indebtedness" was "reduced by $30,000, to $579,999.75."

## III. DISCUSSION

Plaintiffs contend that Gateway cancelled the debt when it issued the form 1099-C. Relying on a federal regulation that sets forth the "identifiable event[s]" for a discharge of indebtedness that generally require the filing of a form 1099-C, plaintiffs rely on the "identifiable event" of "[a] discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt." (26 C.F.R. § 1.6050P-1(a)(1), (b)(2)(i)(G).) In this regard, plaintiffs contend that "Gateway had a procedure in place

7

for deeming a loan uncollectible, cancelling the debt, and . . . issuing a 1099-C" and that Gateway followed that procedure in this case. Therefore, according to plaintiffs, the debt was cancelled. In support of this argument, plaintiffs appear to refer to certain trial and deposition testimony.

We determine that plaintiffs fail to meet their burden on appeal to show error.

First, plaintiffs fail to provide citations to the record for almost all the facts set forth in their opening brief. Plaintiffs' failure to include citations to the record in their opening brief constitutes a violation of rule 8.204(a)(1)(C) of the California Rules of Court,[3] which requires that every brief "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.)

Second, where, as here, the sufficiency of the evidence is challenged on appeal, "the reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise. [Citation.] The appellant's brief must set forth all of the material evidence bearing on the issue, not merely the evidence favorable to the appellant, and it also must show how the evidence does not sustain the challenged finding. [Citations.]" (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368 (*Baxter Healthcare*).) "If the appellant fails to set forth all of the material evidence, its claim of insufficiency of the evidence is waived. [Citations.]" (*Ibid.*; accord, *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246, 1247; see rule 8.204(a)(2)(C).) In this case, in view of plaintiffs' failure to set forth and

---

[3] All further rule references are to the California Rules of Court.

discuss all the evidence material to their contentions and their failure to provide adequate citations to the record, we find that they have forfeited their contentions on appeal.

Third, even were we to address plaintiffs' contentions, which are forfeited on appeal, we would nonetheless conclude that plaintiffs fail to show that the trial court erred in finding that the loan had not been cancelled.

At trial, the parties disputed the legal significance of the form 1099-C. One court has stated that there is not "uniformity" of opinion on this issue. (*FDIC v. Cashion* (4th Cir. 2013) 720 F.3d 169, 177.) "Under the majority view, the 1099-C form is 'a means for satisfying a reporting obligation and not an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt.' [Citation.] Conversely, the courts in the minority view have held that a 1099-C form can constitute prima facie evidence of intent to discharge a loan. [Citation.]" (*Habtemariam v. Vida Capital Group, LLC* (E.D.Cal. May 14, 2021, No. 2:16-cv-01189-MCE-AC) 2021 U.S.Dist. Lexis 93194, pp. *9-10.) However, a federal district court has expressed the following regarding the purported split: "[I]t appears that the two approaches can be harmonized. Under either approach, the 1099-C, alone, is likely insufficient to cancel the debt. There must be some additional proof to demonstrate that the 1099-C is a valid modification of the underlying loan agreement between the parties and that the debt is cancelled." (*Id.* at p. *10.)

In this case, the form 1099-C was not the only evidence pertaining to whether the loan obligation remained enforceable or had been cancelled. The trial court specifically addressed in its statement of decision the form 1099-C and other evidence regarding the status of the loan.

On review of a judgment based upon a statement of decision after a bench trial, we apply the substantial evidence standard of review to the trial court's factual findings. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Under this standard, "we must consider all of the evidence in the light most favorable to the prevailing party, accept as

9

true all the evidence and reasonable inferences therefrom that tend to establish the correctness of the trial court's findings and decision, and resolve every conflict in favor of the judgment. [Citation.] 'It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment.' [Citation.] [¶] 'We emphasize that the test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.' [Citations.]" (*Baxter Healthcare*, *supra*, 120 Cal.App.4th at p. 369.)

The substantial evidence standard typically applies where a *defendant* on appeal contends that there was insufficient evidence at trial to support the judgment in the *plaintiff's* favor. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 (*Sonic Manufacturing*).) In this case, however, the trial court concluded that plaintiffs "did not meet their burden of proof to show that cancellation of the debt had occurred," and now *plaintiffs* on appeal contend that the trial court erred in finding that *they* (*plaintiffs*) failed to meet their burden at trial. When " 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' " (*Id.* at p. 465.) Instead, where " 'the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the *evidence compels a finding in favor of the appellant as a matter of law*. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' [Citation.]" (*Id*. at p. 466, italics added.)

10

In this case, as we have just explained, the trial court concluded that plaintiffs "did not meet their burden of proof to show that cancellation of the debt had occurred." On appeal, plaintiffs do not identify trial evidence with supporting record citations that " 'compels a finding in favor of [them] as a matter of law.' " (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.) Rather, plaintiffs selectively identify, without record citations, purported facts to support their argument that the loan was cancelled. For example, plaintiffs argue that Gateway followed a policy and ultimately decided that the debt would be cancelled.

However, the trial court in its statement of decision explained that "no evidence was presented to the Court of a decision by Gateway, there was no evidence of a written policy to cancel a secured debt under the particular circumstances present in this case, and the only evidence of a 'defined policy' was conflicting. Specifically, there was deposition testimony and an e-mail [proffered] to suggest that it would not have been common practice at Gateway to continue to pursue collection of the debt which was secured by a second lien behind sizeable first deeds of trust, during an overall recession when property values were in sharp decline. However, there was no evidence that this particular [l]oan had been reviewed by any committee, board or executive charged with making the decision of which loans would be cancelled and the lien released. Further there was undisputed evidence that lenders in this time frame (2010-2015) could and did take the position that property values would recover, in which case the secured debt could be collectible (e.g. upon sale or refinance). The Court finds that [p]laintiffs did not meet their burden of proof to show the 'identifiable event' occurred. Rather, at the time the [f]orm 1099-C issued, Gateway was engaged in communications with [p]laintiffs about their ability to pay, their willingness and ability to make some payments towards the debt, [p]laintiffs were making $2,000 monthly payments on the [l]oan, and Gateway was accepting the payments."

11

The trial court further observed: "The IRS 1099-C instructions cited by [p]laintiffs state the existence of a security interest – such as the [d]eed of [t]rust which continued to exist here – is evidence that a debt has not been cancelled. Those instruction[s] provide that when dealing with a secured transaction, a 1099-C should be issued when both the debt has been discharged and the lien associated with that debt has also been discharged or terminated. There is no evidence of any decision made by Gateway to both discharge the debt and to reconvey the [d]eed of [t]rust (or otherwise terminate the lien)." (Underscoring omitted.)

Thus, the record reflects that, rather than there being " 'evidence [that] compels a finding in favor of [plaintiffs] as a matter of law' " that the debt was cancelled, the evidence was, at best for plaintiffs, conflicting. (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.) On appeal, however, "we must consider all of the evidence in the light most favorable to the prevailing party," and we may not reweigh disputes in the evidence. (*Baxter Healthcare*, *supra*, 120 Cal.App.4th at p. 369.) Based on the rules of appellate procedure, plaintiffs fail to establish error in the trial court's conclusion that the loan was not cancelled.

Plaintiffs also point to evidence that the loan was "charged off" by Gateway. However, the trial court found that a "charge-off is not a cancellation of the debt, as both [p]laintiffs' and [defendant's] experts agreed." (Underscoring omitted.) Again, we cannot reweigh the evidence, and plaintiffs fail to demonstrate that the " 'evidence compels a finding in favor of [them] as a matter of law' " that the debt was cancelled based on the charge off by Gateway. (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.)

Plaintiffs also argue that because they "relied upon the issuance of the 1099-C to their detriment in reporting the discharge to the IRS, Gateway and [defendant] are estopped from now claiming the issuance of the 1099-C was a mistake." In making this argument, plaintiffs do not address the trial court's finding that plaintiffs failed to show

12

injury, an element of the doctrine of equitable estoppel, nor do they otherwise point to evidence, with a citation to the record, showing that they in fact sustained injury. (*Honeywell v. Workers' Comp. Appeals Bd*. (2005) 35 Cal.4th 24, 37 [equitable estoppel generally requires the plaintiff to " ' "rely upon the conduct [of the defendant] to [the plaintiff's] injury" ' "].)

For the first time in their reply brief on appeal, plaintiffs contend that the recorded documents concerning defendant's claimed right to plaintiffs' American Canyon residential property "are flawed and fail to properly attach to the . . . property." Plaintiffs argue that defendant as a result did not have the "proper authority" to evict them from the property and to attempt to sell the property to a third party.

We determine that plaintiffs have forfeited this contention for two separate reasons. First, plaintiffs do not provide a citation to the record showing that they raised this theory in the trial court. "Appellate courts generally will not consider matters presented for the first time on appeal. [Citations.]" (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143.) An argument raised for the first time on appeal is generally deemed forfeited. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) Moreover, "[t]he general rule that a legal theory may not be raised for the first time on appeal is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial. [Citation.]" (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780.) In this case, plaintiffs' own complaint alleged facts contrary to the theory they now raise in this court, that is, plaintiffs in their complaint alleged that "[t]he loan was secured by a second [d]eed of [t]rust on the real property located [on] . . . Fourth Street, San Rafael, California and also secured with a second deed of trust on [p]laintiffs' primary residence [in] . . . American Canyon, Napa County, California." Because plaintiffs' theory in this court appears to "depend[] on controverted factual questions whose relevance thereto was not made to appear at trial" (*ibid.*) regarding the recorded

13

documents concerning the American Canyon property, we determine that plaintiffs have forfeited the issue.

Second, even assuming the theory was raised in the trial court, plaintiffs did not raise the issue in this court until their reply brief on appeal. A claim raised for the first time in the reply brief "is forfeited. 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief . . . .' [Citation.]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.)

In sum, plaintiffs fail to demonstrate error by the trial court in its determination that Gateway did not cancel the loan.

## IV. DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*Jones et al. v. Capital Alliance Advisors, Inc.*
**H049391**